De Witt C. Prentice *vs.* James Nutter and another.

March 3, 1879.

Security on part of Crop to be raised—Selection.—Under a provision in an executory agreement for the sale and purchase of certain lands, which in terms grants to the vendor, for a particular season named, "control of and over any fifty acres of wheat" that the vendee in possession may sow during such season, and which the vendor "may select as security for the payment" of certain specified instalments of the purchase-money, the vendor can acquire no right in the way of lien or otherwise upon any specific portion of the wheat crop put in by the vendee, until he makes the selection under the contract.

Action to recover the value of 311 bushels of wheat and 60 bushels of barley, alleged to have been wrongfully taken from plaintiff's possession by the defendants. At the trial in the district court for Nicollet county, before *Hanscome*, J., it appeared that on March 4, 1876, the plaintiff and one Johnson entered into a contract in writing, whereby plaintiff agreed to sell and convey in fee to Johnson 160 acres of land, particularly described therein, and to give him immediate possession, and Johnson agreed to pay for the land $6,000, of which the sum of $750 was to be paid on or before September 15, 1876, and the remainder, in instalments, at various dates thereafter. The contract contained the following provision: "It is further agreed by and between said parties hereto that the said party of the second part (Johnson) shall plant all the cultivated land on the said premises, for the years 1876 and 1877, not less than fifty acres thereof to wheat, and five acres to sugar cane, and the balance in oats, corn, etc.; and the party of the first part (plaintiff) is hereby granted control for the said years 1876 and 1877, of and over any fifty acres of wheat and five acres of sugar cane, so planted, that he may select, as security for the payment of the sums heretofore mentioned which become due on or before July 1, 1878." This contract was attested by the signatures of two witnesses, was duly acknowledged, and on the day of its execution was recorded in the registry of deeds of the county, in book "O" of mortgages. Johnson took possession of the premises, and, in the planting season of 1876, planted the cultivated land thereon, as required by the contract. After the making and record of this contract, Johnson purchased of the defendant Nutter a quantity of seed-grain, agreeing to secure him by a mortgage of the crop to be raised on the premises described in the contract with plaintiff, and afterwards, and on May 20, 1876, and after the wheat was up, Johnson gave to Nutter a note, payable on or before October 12, 1876, with interest, for the price of the grain purchased, and, as security for the debt, also mort-

gaged to him "all the wheat now growing on the following. described land," (describing it particularly, as it is described in the contract,) "the wheat growing on said land being fifty acres, more or less." The mortgage contained a provision that if the mortgagee should consider himself unsafe or insecure at any time, *or if any attempt should be made by the mortgagor or any other person to remove or dispose of the property, the mortgagee might take possession of the property.* It was duly attested and acknowledged, and was filed as a chattel mortgage, in the proper town-clerk's office, on the day of its execution. There was evidence tending to show that more than fifty acres of the land was in wheat, and tending to prove a selection of fifty acres thereof by plaintiff, under the contract, but there was a conflict of evidence as to whether he ever notified Johnson of any such selection. All the wheat raised on the farm was harvested and threshed by Johnson, at his own expense, and mingled together, and all of it was hauled away from the farm by Johnson, three loads of it to the elevator, for which he received tickets, running to plaintiff, and a portion of the remainder (being the wheat in controversy in this action) to the warehouse of one Wainwright. The elevator tickets Johnson delivered to plaintiff, and also gave him, on August 24, 1876, an order on Wainwright for all the wheat stored by him, which order was accepted by Wainwright on the same day. Johnson (who was called as a witness by defendants) testified, on cross-examination, that "the tickets and the order upon Wainwright were all given under the contract, and the proceeds were to be applied to my indebtedness to Prentice for the land," and plaintiff testified to the same effect. On August 25, 1876, the defendant Downs, a constable, by direction of defendant Nutter, took the wheat from Wainwright's possession, by virtue of the mortgage.

The barley was taken from plaintiff's possession by Downs, by virtue of an execution on a judgment against plaintiff and

in favor of defendant Nutter, and was claimed by plaintiff as exempt.

The plaintiff's counsel requested the following instructions, and excepted to the rulings of the court modifying or refusing them:

1. "The record of the contract between the plaintiff and Johnson was notice to the defendants of all the rights and reservations of plaintiff in and growing out of said contract; and if the jury find that the plaintiff selected fifty acres of wheat mentioned in said contract, upon which fifty acres grew the wheat in controversy, [or if they find that plaintiff obtained possession of said wheat before defendants' taking,] then they shall find for the plaintiff, for the value of the wheat;" which instruction the court gave, except the words in brackets.

2. "The giving of the order on Wainwright by Johnson, and the delivery of said order to Wainwright, and its acceptance by him, was a delivery of the wheat in controversy to plaintiff, and Wainwright then became plaintiff's agent, and his possession of said wheat became plaintiff's possession of the same; and such possession of said wheat by plaintiff was possession under said land contract with Johnson;" which instruction was refused.

3. "If you find there was a selection of the fifty acres of wheat by plaintiff under the contract between Johnson and him, it did not depend on any consent of Johnson to such selection; and such selection by plaintiff would be valid without such consent;" which instruction the court gave, with the following qualification: "If Johnson had sufficient notice of the selection."

4. "If the jury find that the defendant Nutter had, before the execution and delivery of said chattel mortgage by Johnson to Nutter, any notice, actual or constructive, or any knowledge from any source, sufficient to put him on inquiry as to the existence of the rights of the plaintiff in the wheat in controversy, then the defendant Nutter was not a purchaser or

mortgagee in good faith, and they shall find for the plaintiff, for the value of the wheat;" which instruction was given.

The jury found for the plaintiff, for the value of the barley alone. He moved for a new trial, which was refused, and he appealed from the order denying the motion.

*Ladd & Stone,* for appellant.

*G. S. Ives,* for respondent.

CORNELL, J. On March 4, 1876, plaintiff and one Johnson entered into a mutual written agreement, by the terms of which the former agreed to sell and convey, and the latter to purchase, certain lands therein described, for a designated sum agreed on, to be paid in instalments as was therein specified. Under the contract, the vendee was entitled to the immediate possession of the lands, which he soon took and continued to hold. The provision of the contract which concerns the present controversy, is as follows: "It is further agreed by and between said parties hereto, that the said party of the second part (Johnson) shall plant all the cultivated land on the said premises, for the years 1876 and 1877, not less than fifty acres thereof to wheat, and five acres to sugar cane, and the balance in oats, corn," etc.; "and the first party of the first part (Prentice) shall have and is hereby granted control for the said years of 1876 and 1877 of and over any fifty acres of wheat and five acres of sugar cane so planted that he may select, as security for the payment of the sums hereinbefore mentioned which become due on or before July 1, 1878."

The plain purpose of this provision was to obligate the vendee to sow to wheat, during the season mentioned, not less than fifty acres of the cultivated land bought by him of the vendor; and it was contemplated that he might sow a greater area, as in fact he did. It was also its purpose to secure the vendor for the instalments of the purchase-money falling due on or before July 1, 1878, by giving him a lien in the way of security, upon a portion of the wheat crop so agreed to be put in by the vendee, and embraced within any fifty acres to be thereafter particularly designated by the

vendor. The security intended was upon a specific portion of the crop which was thereafter to be produced by the vendee and selected by the vendor, and not upon the land upon which it might be grown, nor upon any estate or interest therein. The right of control which was "granted" over the land thus to be selected, was for the purpose of enabling the vendor to protect his security, and make it available as such, and it was limited to that purpose. Whether this part of the agreement in reference to the security is to be regarded as in the nature of a chattel mortgage upon a crop thereafter to be produced by the one party, and to be designated by the other, or as a simple executory contract, it is evident that plaintiff could acquire no right, in the way of lien or otherwise, to any specific portion of the crop, until he should make some selection under the terms of the contract, and give some notice or information thereof to the vendee.

The evidence was sufficient to warrant the jury in finding that Johnson, during the season mentioned, sowed more than fifty acres of the cultivated land to wheat; that prior to the harvest and removal of the crop from the land, no selection of any portion of the crop was made by plaintiff under the agreement, but the whole crop was harvested and threshed by Johnson, and the grain mingled together in one common mass as his own, without reference to any selection, or any particular place on the entire tract sown whence it came; and such, under the rulings of the trial court, must be taken to have been the findings of the jury by their verdict.

The instructions upon this subject were as favorable to the plaintiff as he could rightfully ask, and no error was committed of which he can complain. There was no evidence whatever tending to show that the order given upon Wainwright for the delivery to plaintiff of the wheat which was being held in store for Johnson had any connection with any stipulation in the land contract between plaintiff and Johnson, and, therefore, the court was right in refusing plaintiff's request upon this point.

Order affirmed.